UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
TRUSTEES OF THE PAVERS AND ROAD          :
BUILDERS DISTRICT COUNCIL WELFARE,       :
PENSION, AND ANNUITY FUNDS, and THE      :
TRUSTEES OF THE LOCAL 1010               :          REPORT AND
APPRENTICESHIP, SKILL IMPROVEMENT, AND   :          RECOMMENDATION
TRAINING FUND,                           :
                                         :          24-CV-537 (FB)(MMH)
                        Plaintiffs,      :
                                         :
            -against-                    :
                                         :
TOROS BROTHERS CONSTRUCTION CORP.,       :
                                         :
                        Defendant.       :
------------------------------------------------------------------ x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiffs Trustees of the Pavers and Road Builders District Council Welfare, Pension, and Annuity Funds and The Trustees of the Local 1010 Apprenticeship, Skill Improvement, and Training Fund (collectively, the "Funds") sued Defendant Toros Brothers Construction Corp. ("Toros Brothers"), alleging violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), and the Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.* ("LMRA"). (*See generally* Compl., ECF No. 1.)[1] Before the Court is Plaintiff's motion for default judgment pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. (*See generally* Mot., ECF No. 10.) The Honorable Frederic Block referred the motion for report and recommendation. For the reasons set forth below, the Court respectfully recommends that the motion should be **granted in part**.

---

[1] All citations to documents filed on ECF are to the ECF document number (i.e., "ECF No. ___") and pagination ("___ of ___") in the ECF header unless otherwise noted.

# I.    BACKGROUND

## A.    Factual Allegations

The following facts are taken from the Complaint and documents incorporated by reference into the Complaint and are assumed to be true for the purposes of this motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015).

The Funds are employee benefit plans within the meaning of ERISA and are administered from an office in Whitestone, New York.  (Compl., ECF No. 1 ¶ 4.)  Plaintiffs are employer and employee trustees of multiemployer labor-management trust funds organized and operated within the meaning of the LMRA.  (*Id.*)  Defendant is a New York business corporation engaged in the construction business, with a principal executive office located in Brooklyn, New York.  (*See id.* ¶ 5.)  Defendant is an employer engaged in an industry affecting commerce within the meaning of ERISA and the LMRA.  (*See id.*)

At all relevant times, Defendant was bound by a Project Labor Agreement ("PLA") regarding work performed on behalf of the New York City School Construction Authority.  (*See* Loscalzo Decl. Exs. A–C (Ltrs. & PLA), ECF Nos. 11-1 to 11-3.)  Through the PLA, Defendant was bound to a collective bargaining agreement (the "CBA") with the Highway, Road and Street Construction Laborers Local Union 1010 (the "Union") for the period between July 1, 2021 through June 30, 2024.  (*See* Compl., ECF No. 1 ¶ 10; *see also* Loscalzo Decl. Ex. D (CBA), ECF No. 11-4 at 41–42.)  The CBA incorporates the Trust Agreements which permit Plainitffs to establish rules for administration of the CBA.  (*See* Loscalzo Decl. Ex. D

(CBA), ECF No. 11-4 at 24; Compl., ECF No. 1 ¶¶ 11–12; *see generally* Montelle Decl. Ex. E (Trust Agts.), ECF No. 12-1.)

Pursuant to the CBA, Plaintiffs established a Policy for Collection of Delinquent Fringe Benefits Contributions (the "Collection Policy"). (Compl., ECF No. 1 ¶ 13.) Under the CBA, Defendant must remit specified benefit contributions to the Funds and related entities for all work performed by its employees within the trade and geographical jurisdiction of the Union ("Covered Work") and specified dues check-offs and other contributions to the Union ("Union Assessments"). (*Id.* ¶¶ 13–15; *see generally* Montelle Decl. Ex. F (Collection Policy), ECF No. 12-2; *see* Loscalzo Decl. Ex. D (CBA), ECF No. 11-4 at 23–27.) Defendant's contributions and a report of the number of hours of Covered Work performed are due to the Funds on the 35th day following the close of the month in which the hours were worked. (Compl., ECF No. 1 ¶¶ 16, 23; Loscalzo Decl. Ex. D (CBA), ECF No. 11-4 at 24; Montelle Decl. Ex. F (Collection Policy), ECF No. 12-2 at 3.)

Under the Collection Policy, if an employer is delinquent in making contributions and did not submit the required remittance reports, the Funds are entitled to estimate the amount of delinquent contributions for each month. (Compl., ECF No. 1 ¶ 18.) Pursuant to the CBA and Collection Policy, if any employer fails to pay contributions when due, the employer is liable for interest on the unpaid contributions at the annual rate of ten percent, liquidated damages in the amount of ten percent of the unpaid contributions, and attorneys' fees if necessary to collect. (*Id.* ¶¶ 19–20; Loscalzo Decl. Ex. D (CBA), ECF No. 11-4 at 26; Montelle Decl. Ex. F (Collection Policy), ECF No. 12-2 at 3.) Furthermore, the CBA and Collection Policy provide that the employer is obligated to pay the Funds' attorneys' fees and court costs if the Funds are required to employ an attorney to collect delinquent benefit contributions. (*See* Compl., ECF No. 1

¶ 20; Loscalzo Decl. Ex. D (CBA), ECF No. 11-4 at 26; Montelle Decl. Ex. F (Collection Policy), ECF No. 12-2 at 3.)

Defendant failed to submit reports detailing the number of hours of Covered Work performed by its employees for the periods from January 2022 through March 2022 and January 2023 through November 2023, and accordingly, owes the Funds contributions and Union Assessments for this same period.  (Compl., ECF No. 1 ¶ 24.)  Defendant also failed to timely remit contributions to the Funds for the period November 2021 and April 2022 through December 2022.  (*Id.* ¶ 25.)  Plaintiffs allege that Defendant owes interest on the unpaid contributions; liquidated damages; and Plaintiffs' attorneys' fees and collections costs.  (*See id.* ¶ 26.)

### B.    Procedural History

Plaintiff initiated this action on January 25, 2024 and served Defendant with the Summons and Complaint through New York's Secretary of State on January 29, 2024.  (Compl., ECF No. 1; Aff. of Service, ECF No. 5.)   After Defendant failed to appear or otherwise respond to the Complaint, the Clerk of Court entered default against Defendant on March 1, 2024.  (Entry of Default, ECF No. 8.)  On May 6, 2024, Plaintiff moved for default judgment and damages and, the next day, served Defendant with the motion for default judgment at Defendant's last known business address by mail and by email.  (*See generally* Mot., ECF No. 10; Cert. of Service, ECF No. 16.)  Judge Block referred the motion for report

and recommendation.  (May 6, 2024 Referral Order.)  To date, Defendant has not appeared or responded to the motion.

## II.      STANDARD FOR DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment.  Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y. Mar. 9, 2021).  *First*, when a party uses an affidavit or other proof to show that a party has "failed to plead or otherwise defend" against an action, the clerk shall enter default. Fed. R. Civ. P. 55(a).  If a claim is for a sum certain or a sum that can be made certain by computation, the clerk can enter judgment.  Fed. R. Civ. P. 55(b)(1).  *Second*, and "[i]n all other cases, the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2); *Victoriano Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).  To enter or effectuate judgment the Court is empowered to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.  Fed. R. Civ. P. 55(b)(2).

The decision to grant or deny a default motion is "left to the sound discretion of a district court."  Shah *v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (cleaned up).  The Court must draw all reasonable inferences in favor of the movant.  *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  However, "'a default only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant.'"  *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 265

(E.D.N.Y. 2019) (quoting *Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013)).

### III.   JURISDICTION AND VENUE

#### A.   Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiff's claims pursuant to ERISA, 29 U.S.C. §§ 1132(e)(1), 1132(f), and 1451(c); and pursuant to the LMRA, 28 U.S.C. § 185(c).  *See* 28 U.S.C. § 1331.

#### B.   Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).  The three requirements for personal jurisdiction are: (1) the plaintiff's service of process upon the defendant must have been procedurally proper; (2) there must be a statutory basis for personal jurisdiction that renders such service of process effective; and (3) the exercise of personal jurisdiction must comport with constitutional due process principles.  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59–60 (2d Cir. 2012) (subsequent history omitted).

The Court has personal jurisdiction over Defendant.  *First*, Plaintiff served Defendant by delivering copies of the Summons and Complaint with the New York Secretary of State. (Aff. of Service, ECF No. 5.)  This method of service comports with federal and state law for service of process on a corporation.  Fed. R. Civ. P. 4(h)(1)(A), (e)(1); N.Y. C.P.L.R. § 311(a)(1); N.Y. Bus. Corp. L. § 306(b)(1).  *Second*, "the Court has general jurisdiction over [Defendant] because it is a New York corporation 'doing business' in New York." *Tzilin v. Jimmy G Constr. Corp.*, No. 23-CV-4047 (ENV)(MMH), 2024 WL 4309775, at *4 (E.D.N.Y.

Sept. 26, 2024) (cleaned up) (quoting *Francis v. Ideal Masonry, Inc.*, No. 16-CV-2839 (NGG)(PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018) (citing in turn *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) and N.Y. C.P.L.R. § 301), *adopted by* 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018)). *Third*, "[s]ince jurisdiction is proper for [the Defendant] under [the] CPLR, the Court's exercise of personal jurisdiction comports with constitutional due process." *Francis*, 2018 WL 4292171, at *3. The Defendant therefore "has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Licci*, 673 F.3d at 60 (citation omitted).

### C.    Venue

An action to recover unpaid contributions under ERISA may be brought in the district where the plan is administered. 29 U.S.C. §§ 1132(e)(2) & 1451(d). Because the Funds are administered in Whitestone, New York, venue in this district is appropriate.

## IV.    DEFAULT JUDGMENT FACTORS

Courts use the same three-factor test used to set aside a default judgment to determine whether to grant a default judgment. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Avail 1 LLC v. Latief*, No. 17-CV-5841 (FB)(VMS), 2020 WL 5633869, at *4 (E.D.N.Y. Aug. 14, 2020). Specifically, courts examine: "(1) whether the defendant's default was willful; (2) whether the defendant has a meritorious defense to the plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Courchevel 1850 LLC v. Rodriguez*, No. 17-CV-6331 (MKB),

2019 WL 2233828, at *3 (E.D.N.Y. May 22, 2019) (citing *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

As to the first factor of willfulness, a defendant's failure to answer a complaint and respond to a motion for default judgment is considered willful. *Acosta v. DRF Hosp. Mgmt. LLC*, No. 18-CV-346 (DRH)(AKT), 2019 WL 1590931, at *6 (E.D.N.Y. Mar. 13, 2019), *adopted by* 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019) ("When a defendant is continually and entirely unresponsive, defendant's failure to respond is considered willful.") (cleaned up). Because Defendant was properly served, its failure to respond or otherwise appear in this action demonstrates willfulness.

Second, without an answer to the Complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021); *Finkel v. Gaffney-Kroese Elec. Supply Corp.*, No. 22-CV-1777 (DG)(TAM), 2023 WL 2579165, at *4 (E.D.N.Y. Feb. 22, 2023), *adopted by* Order Adopting R. & R., No. 22-CV-1777 (E.D.N.Y. Mar. 10, 2023); *Gesauldi v. D. Gangi Contracting Corp.*, No. 18-CV-3773 (FB)(SJB), 2019 WL 1130729, at *3 (E.D.N.Y. Feb. 11, 2019), *adopted by* 2019 WL 1128356 (E.D.N.Y. Mar. 12, 2019). Accordingly, this factor weighs in favor of default judgment.

Third, the Funds will be prejudiced if the motion for default judgment is denied because they have "no alternative legal redress." *United States v. Myers*, 236 F. Supp. 3d 702, 708–09 (E.D.N.Y. 2017). In other words, because Defendant has failed to respond or otherwise appear in this action, without the entry of default judgment, the Funds would be unable to recover the

unpaid contributions.  *Trs. of the New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprent., Journeyman Retraining, Educ. & Indus. Fund v. Inniss Constr., Inc.*, No. 20-CV-6894 (LJL)(KHP), 2021 WL 2556130, at *2 (S.D.N.Y. May 13, 2021), *adopted sub. nom. by Trs. of New York City Dist. Council of Carpenters Pension Fund v. Inniss Constr., Inc.*, No. 20-CV-6894 (LJL)(KHP), 2021 WL 2555840 (S.D.N.Y. June 22, 2021).

Based on the foregoing, entry of default judgment is permissible.  The Court now turns to the issue of liability.

## V.   LIABILITY

### A.   ERISA

Section 515 of ERISA provides that an employer "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145; *Trs of Plumbers Loc. Union No. 1 Welfare Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(k) Sav. Plan v. M. Vascellaro, Inc.*, No. 21-CV-4076 (DG)(CLP), 2022 WL 17820119, at *3 (E.D.N.Y. Aug. 10, 2022).  To establish a violation of section 515, Plaintiffs must plausibly allege that Defendant is: (1) an employer; (2) bound by a CBA that required payment of contributions; and (3) failed to make those contributions.  *Bakery & Confectionery Union v. Mrs. Maxwell's Bakery, Inc.*, No. 21-CV-308 (RPK)(SJB), 2022 WL 18107257, at *5 (E.D.N.Y. Dec. 6, 2022).

The facts alleged in the Complaint establish Defendant's liability.  First, Plaintiffs allege that Defendant is an employer in an industry affecting commerce and that the Funds are employee benefit plans within the meaning of ERISA.  (Compl., ECF No. 1 ¶¶ 4–5.)  Next,

Plaintiffs allege that Defendant was bound by a CBA and Collection Policy that required Defendant to remit benefit contributions and Union Assessments to the Funds according to the number of Covered Work hours its employees performed.  (*Id.* ¶¶ 14–16.)  Specifically, Defendant was bound by a PLA that incorporated the CBA. (*See* Loscalzo Decl. Exs. A–C (Ltrs. & PLA), ECF Nos. 11-1 to 11-3.)  Plaintiffs allege that per these obligations, Defendant was required to submit remittance reports detailing the Covered Work hours.  (Compl., ECF No. 1 ¶ 17.)  Lastly, Plaintiffs allege that Defendant failed to make contributions and failed to submit remittance reports pursuant to its obligations.  (*Id.* ¶¶ 23–25.)

Based on the foregoing, the Court respectfully recommends entry of default judgment against Defendant on Plaintiffs' ERISA claim for unpaid contributions.

## B.    LMRA

Section 301(a) of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce."  29 U.S.C. § 185(a).  "Under the LMRA, if an employer fails to make contributions to employee benefit plans as required by an agreement, [the employer] may be held liable." *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14B, AFL-CIO v. Focus Constr. Grp.*, Inc., No. 23-CV-1710 (ENV)(RER), 2023 WL 7687844, at *2 (E.D.N.Y. Oct. 10, 2023) (citation omitted).

Here, the facts alleged in the Complaint also establish Defendant's liability under the LMRA.  First, Plaintiffs allege that they are trustees of multiemployer labor management trust funds operating in accordance with the LMRA.  (Compl., ECF No. 1 ¶ 4.)  Second, Plaintiffs allege that Defendant was an "employer in an industry affecting commerce within the meaning . . . of the LMRA."  (*Id.* ¶ 5.)  As stated above, Plaintiffs allege that Defendant was

obligated to remit benefit contributions, Union Assessments, and periodic reports regarding the amount of Covered Work performed yet failed to do so.  (*See id.* ¶¶ 14–17, 23–25). "Plaintiffs' uncontested allegations are sufficient to establish defendant's liability under the LMRA." *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Cape Mount Heavy Constr. & Assocs., LLC*, No. 22-CV-5050 (KAM)(JRC), 2023 WL 5830338, at *4 (E.D.N.Y. July 31, 2023), *adopted by* 2023 WL 5287218 (E.D.N.Y. Aug. 17, 2023).

Based on the foregoing, the Court respectfully recommends entry of default judgment against Defendant on Plaintiffs' LMRA for unpaid dues and assessments.

## VI.    DAMAGES

As Defendant's liability has been established, the Court turns to damages.  "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Bricklayers*, 779 F.3d at 189 (cleaned up). Rather, "[t]he [C]ourt must be satisfied that Plaintiff has met the burden of proving damages to the [C]ourt with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC)(SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (cleaned up).  Courts must determine damages "with reasonable certainty," and avoid impermissible speculation. *Pasatieri v. Starline Prod., Inc.*, No. 18-CV-4688 (RPK)(VMS), 2020 WL 5913190, at *2 (E.D.N.Y. Oct. 6, 2020) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  "To evaluate the proposed damages, the court 'may rely on detailed

affidavits or documentary evidence.'" *Focus Constr. Grp.*, 2023 WL 7687844, at *2 (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

"Where an employee benefit plan plaintiff has established liability under § 515 of ERISA, the court shall award the plan (a) the unpaid contributions; (b) interest on the unpaid contributions; (c) an amount equal to the greater of (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent; (d) reasonable attorney's fees and costs; [and] (e) other relief the court deems appropriate." *Sullivan v. Champion Elec. Mech. Builders Corp.*, No. 18-CV-5618 (ENV)(RER), 2020 WL 9814085, at *4 (E.D.N.Y. Feb. 25, 2020), *adopted by* Order Adopting R. & R., *Sullivan v. Champion Elec. Mech. Builders Corp.*, No. 18-CV-5618 (ENV)(RER) (E.D.N.Y. Mar. 21, 2020) (citing 29 U.S.C. § 1132(g)(2)).

Further, "although a successful plaintiff suing on behalf of a labor organization for violation of labor contracts pursuant to Section 301 of the LMRA is also entitled to an award of compensatory money damages, a plaintiff bringing a claim under Section 301 of the LMRA may recover only those damages provided for in the collective bargaining agreement and trust agreements." *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs, Loc. 14-14B, AFL-CIO by Christian v. Coastal Env't Grp. Inc.*, No. 18-CV-5773 (AMD)(ST), 2019 WL 4603805, at *10 (E.D.N.Y. Sept. 5, 2019), *adopted sub nom. by Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs v. Coastal Env't Grp. Inc.*, No. 18-CV-5773 (AMD)(ST), 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019) (citation omitted).

Here, Plaintiffs seek the following damages: (1) estimated delinquent contributions; (2) interest on the estimated delinquent contributions; (3) liquidated damages; (4) Union

Assessments; (5) late payment interest; (6) attorneys' fees and costs; and (7) post-judgment interest. (Mem., ECF No. 15 at 13–19.) To support these requests, Plaintiffs rely on the declarations of Keith Loscalzo, an officer of the Union (Loscalzo Decl., ECF No. 11); Joseph Montelle, the Funds' administrator (Montelle Decl., ECF No. 12); Philip Wilson, Plaintiffs' Accounting Manager from a third-party administrator, Zenith American Solutions, Inc. ("Zenith") (Wilson Decl., ECF No. 13); and Adrianna R. Grancio, Plaintiffs' counsel (Grancio Decl., ECF No. 14), along with supporting exhibits.

### A.    Delinquent Contributions and Union Assessments

Plaintiffs seek $197,666.40 in estimated ERISA contributions and $7,822.97 in estimated Union Assessments for the periods January 2023 through November 2023, when Defendant did not submit monthly remittance reports. (Mem., ECF No. 15 at 9–10; Montelle Decl., ECF No. 12 ¶ 12; Grancio Decl., ECF No. 14 ¶ 19.) As noted, Defendant was required to submit reports detailing the number of hours worked by each employee 35 days after the close of the month during which the work was performed. (Compl., ECF No. 1 ¶¶ 16, 23; Loscalzo Decl. Ex. D (CBA), ECF No. 11-4 at 24; Montelle Decl. Ex. F (Collection Policy), ECF No. 12-2 at 3.) According to the Collection Policy, when an employer fails to submit remittance forms, Plaintiffs may estimate the amount of delinquency. (Montelle Decl., ECF No. 12 ¶ 13; Compl., ECF No. 1 ¶ 18; Montelle Decl. Ex. F (Collection Policy), ECF No. 12-2 at 9–10.)

Under the Collection Policy's Estimation Protocol, Plaintiffs calculate the delinquency as "the greater of [] the average of the monthly payments based on reports actually submitted by the employer for the last three [] months for which payments and reports were submitted or [] the average of the monthly payments based on reports actually submitted by the Employer

for the last twelve [] months for which payments and reports were submitted." (Montelle Decl. Ex. F (Collection Policy), ECF No. 12-2 at 9–10.)

Applying this protocol, Plaintiffs estimated the delinquency for this period using the remittance reports and payment from September 2022 through November 2022, the last three months for which Defendant submitted payment. (Montelle Decl., ECF No. 12 ¶ 15; Montelle Decl. Ex. G (remittance reports), ECF No. 12-3; *id.* Ex. H, ECF No. 12-4 (Estimation Spreadsheet).)   First, using these reports, Plaintiffs determined the total amount of contributions and Union Assessments paid each month and then calculated the three-month average. (Montelle Decl., ECF No. 12 ¶¶ 16–17; *id.* Ex. H, ECF No. 12-4 (Estimation Spreadsheet).)[2]  For the period between September 2022 through November 2022, Plaintiffs calculated that the three-month contribution average is $18,680.87.  (Montelle Decl., ECF No. 12 ¶ 18; *id.* Ex. H, ECF No. 12-4 at 1 (Estimation Spreadsheet).)

Second, Plaintiffs estimated the number of hours worked for the delinquent period by dividing the three-month contribution average by the Total Benefit Rate applicable to the period. (Montelle Decl., ECF No. 12 ¶ 19; *id.* Ex. H, ECF No. 12-4 (Estimation Spreadsheet).) Here, Defendant's delinquency spans two different benefit periods (January–June 2023 and July 2023–November 2023), and this calculation was performed for each period. (Montelle Decl., ECF No. 12 ¶ 20; *id.* Ex. H, ECF No. 12-4 (Estimation Spreadsheet); *id.* Ex. I, ECF No. 12-5 (rates).)  For example, for the period of January 2023 through June 2023, the Total

---

[2] Plaintiffs determine the total amount of contributions and assessments paid for each month by adding the amounts owed to the Pavers Welfare Fund, Income Replacement Benefit, Pavers Pension Fund, Pavers Annuity Fund, Local 1010 Training Fund, Local 1010 LECT, NYS LECET, and NYS Laborers Health and Safety Fund (the sum of which, the "Total Benefit Rate").  (Montelle Decl., ECF No. 12 ¶ 16.)

Benefit Rate was $50.19. (Montelle Decl. Ex. I, ECF No. 12-5 at 1.) The three-month contribution average ($18,680.87) divided by the benefit rate ($50.19) yields an average of 372.20 hours per month for January 2023 through June 2023. (Montelle Decl., ECF No. 12 ¶ 21; *id.* Ex. H, ECF No. 12-4 (Estimation Spreadsheet).) Similarly, for the period of July 2023 through November 2023, Plaintiffs divided the three-month contribution average ($18,680.87) by the total benefit rate ($51.87) to yield an average of 360.15 hours per month for that period. (Montelle Decl., ECF No. 12 ¶ 22; *id.* Ex. H (Estimation Spreadsheet), ECF No. 12-4.)[3]

Third, Plaintiffs multiply the average number of hours for the delinquent period by the Total Benefit for each respective fund to determine the average contribution due to each fund per month for the delinquency period. (Montelle Decl., ECF No. 12 ¶ 23.) Finally, Plaintiffs add the totals for each fund to determine the estimated monthly contributions due to the Plaintiffs and multiplied that by the number of months the employer failed to submit reports. (*Id.* ¶¶ 24, 30.) Using this methodology, Plaintiffs estimate $17,992.20 in unpaid contributions and $688.57 in unpaid Union Assessments per month. Multiplying the sum of unpaid contributions and Union Assessments in the respective periods by the number of months in each period yields the following:

---

[3] For this period, Plaintiffs exclude amounts owed to the Heavy Construction Industry Fund (*i.e.*, $0.30) from the Total Benefit Rate (*i.e.*, $52.17). (*See* Montelle Decl., ECF No. 12 ¶ 16; *id.* Ex. I, ECF No. 12-5 at 3.)

| Estimated Damages | | | | | |
|---|---|---|---|---|---|
| *Dates* | *Unpaid Monthly Contributions* | *Unpaid Monthly Union Assessments* | *Number of Months* | *Total Contributions Owed* | *Total Assessments Owed* |
| January 2023 – June 2023 | $17,992.20 | $688.57 | 6 | $107,953.20 | $4,131.42 |
| July 2023 – November 2023 | $17,942.64 | $738.31 | 5 | $89,713.20 | $3,691.55 |
| **TOTAL** | | | | **$197,666.40** | **$7,822.97** |

(Montelle Decl., ECF No. 12 ¶¶ 25, 27–28, 30–31.)   The Court has reviewed Plaintiffs' calculations and finds them to be accurate.   (*Id.* Ex. H, ECF No. 12-4 (Estimation Spreadsheet).)   Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$197,666.40** in unpaid contributions and **$7,822.97** in Union Assessments for the period of January 2023 through November 2023.

**B.   Interest**

Plaintiffs seek $13.623.46 in interest on unpaid contributions through April 12, 2024. (Mem., ECF No. 15 at 15; Montelle Decl., ECF No. 12 ¶ 38.)

ERISA provides that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of [the Internal Revenue Code of 1986]."   29 U.S.C. § 1132(g)(2).   Pursuant to the Collection Policy, "[Defendant] shall be liable for the payment of delinquent [c]ontributions with interest at the rate of ten percent (10%) per annum" calculated from the due date. (Montelle Decl. Ex. F (Collection Policy), ECF No. 12-2 at 2.)

Plaintiffs use the following formula to calculate interest for estimated delinquent contributions and assessments: (1) determine the number of days the contributions are late (*i.e.*, the number of days between the due date and April 12, 2024); (2) calculate the daily rate

interest by multiplying the contributions due per month by ten percent as provided in the CBA and Collection Policy (3) divide the full year of interest by 365 days; and (4) multiply the daily interest rate by the number of days the contributions are late. (Montelle Decl., ECF No. 12 ¶ 35; *id.* Ex. 4, ECF No. 12-4 at 3 (Interest Calculation).)

For example, for January 2023, Defendant owed $17,992.20 in contributions that were due on March 7, 2023 (35 days after the close of the month) as per the CBA and Collection Policy. (Loscalzo Decl. Ex. D (CBA), ECF No. 11-4 at 24; Montelle Decl. Ex. F (Collection Policy), ECF No. 12-2 at 3; Montelle Decl., ECF No. 12 ¶ 35; Montelle Decl. Ex. H (Interest Calculation), ECF No. 12-4 at 3.) As of April 12, 2024, contributions due for January 2023 were 402 days late. The total yearly interest due for the January 2023 contributions was calculated as $1,799.22 ($17,992.20 x 10%), then divided by 365 days to yield a daily interest rate of $4.93. (Montelle Decl., ECF No. 12 ¶ 35; *id.* Ex. H (Interest Calculation), ECF No. 12-4.) The daily interest rate was then multiplied by 402 days to yield total interest of $1,981.86 for the January 2023 contributions. Plaintiffs repeated this calculation for February through November 2023. (Montelle Decl., ECF No. 12 ¶ 36; *id.* Ex. H (Interest Calculation), ECF No. 12-4 at 3.) The Court has reviewed Plaintiffs' interest calculations and has confirmed their accuracy.

| Month | Due Date | Interest through | Contributions | Union Assessments | Days Late | Daily Interest | Total Interest |
|-------|----------|------------------|---------------|-------------------|-----------|----------------|----------------|
| 1/31/2023 | 3/7/2023 | 4/12/2024 | $17,992.20 | $688.57 | 402 | $4.93 | $1,981.86 |
| 2/28/2023 | 4/4/2023 | 4/12/2024 | $17,992.20 | $688.57 | 374 | $4.93 | $1,843.82 |
| 3/31/2023 | 5/5/2023 | 4/12/2024 | $17,992.20 | $688.57 | 343 | $4.93 | $1,690.99 |
| 4/30/2023 | 6/4/2023 | 4/12/2024 | $17,992.20 | $688.57 | 313 | $4.93 | $1,543.09 |
| 5/31/2023 | 7/5/2023 | 4/12/2024 | $17,992.20 | $688.57 | 282 | $4.93 | $1,390.26 |
| 6/30/2023 | 8/4/2023 | 4/12/2024 | $17,992.20 | $688.57 | 252 | $4.93 | $1,242.36 |
| 7/31/2023 | 9/4/2023 | 4/12/2024 | $17,942.64 | $738.31 | 221 | $4.92 | $1,087.32 |
| 8/31/2023 | 10/5/2023 | 4/12/2024 | $17,942.64 | $738.31 | 190 | $4.92 | $934.80 |
| 9/30/2023 | 11/4/2023 | 4/12/2024 | $17,942.64 | $738.31 | 160 | $4.92 | $787.20 |
| 10/31/2023 | 12/5/2023 | 4/12/2024 | $17,942.64 | $738.31 | 129 | $4.92 | $634.68 |
| 11/30/2023 | 1/4/2024 | 4/12/2024 | $17,942.64 | $738.31 | 99 | $4.92 | $487.08 |
| | | | **$197,666.40** | **$7,822.97** | | | **$13,623.46** |

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$13,623.46** in interest for unpaid contributions calculated through April 12, 2024.

Plaintiffs also request additional interest from April 12, 2024 through the date of judgment and are entitled to this relief. *Coastal Env't Grp. Inc.*, 2019 WL 4603805, at *11. The Court respectfully recommend that Plaintiffs should be awarded additional interest at a daily rate of **$54.18** from April 12, 2024, through the date of judgment.[4]

### C.    Late Payment Interest

Plaintiffs seek $4,684.91 in late payment interest for the periods of November 2021 and April 2022 through December 2022, during which Defendant paid the Union Assessments late.

---

[4] This daily interest rate was calculated by combining the daily interest rate for all unpaid contribution months ($4.93 (January 2023) + $4.93 (February 2023) + $4.93 (March 2023) + $4.93 (April 2023) + $4.93 (May 2023) + $4.93 (June 2023) + $4.92 (July 2023) + $4.92 (August 2023) + $4.92 (September 2023) + $4.92 (October 2023) + $4.92 (November 2023) = $54.15517. *See Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. USA Roofing Co. Corp.*, No. 22-CV-5053 (FB)(PK), 2023 WL 6318618 at *9 (E.D.N.Y. Sept. 12, 2023), *adopted by* 2023 WL 6308085 (E.D.N.Y. Sept. 28, 2023), at *8 (calculating the daily interest rate through the date of judgment by combining the daily interest rate for all unpaid contribution months).

(Mem., ECF No. 15 at 15–16; Montelle Decl., ECF No. 12 ¶ 32; Wilson Decl., ECF No. 13 ¶ 18.)

Pursuant to the Collection Policy, "[Defendant] shall be liable for the payment of delinquent [c]ontributions with interest at the rate of ten percent (10%) per annum" calculated from the due date. (Montelle Decl. Ex. F (Collection Policy), ECF No. 12-2 at 3.)

Here, Plaintiffs calculated late payment interest using the same methodology described for calculating interest on the unpaid contributions. (Wilson Decl., ECF No. 13 ¶¶ 17–18.) Plaintiffs provide a late payment interest report generated by Zenith. (Wilson Decl. Ex. K, ECF No. 13-2.) The Court has reviewed these calculations and find them to be correct.

Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$4,684.91** in late payment interest for the periods of November 2021 and April 2022 through December 2022.

### D.    Liquidated Damages

Plaintiffs seek $19,766.64 in liquidated damages on the unpaid contributions but not on the unpaid Union Assessments. (Mem., ECF No. 15 at 14–15; Montelle Decl., ECF No. 12 ¶¶ 34–37.)

ERISA permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the CBA (up to 20 percent of the delinquent contributions). *Coastal Env't Grp. Inc.*, 2019 WL 4603805, at *12 (citing 29 U.S.C. § 1132(g)(2)(C). Pursuant to the Collection Policy, "[Defendant] shall be liable for the payment of . . . liquidated damages of ten percent (10%) of the amount of delinquent Contributions owing." (Montelle Decl. Ex. F (Collection Policy), ECF No. 12-2 at 3.)

Plaintiffs accurately calculated the liquidated damages for the period between January 2023 through November 2023 by multiplying the unpaid contributions by ten percent for a total of $19,766.64 (*i.e.*, $197,666.40 x 10%). (Montelle Decl., ECF No. 12 ¶ 37.) Accordingly, the Court respectfully recommends that Plaintiffs should be awarded **$19,766.64** in liquidated damages

### E.    Attorney's Fees

Plaintiffs request $14,639.70 in attorneys' fees for 46.8 hours of work. (Mem., ECF No. 15 at 17–19; Grancio Decl., ECF No. 14 ¶ 16; Grancio Decl. Ex. P., ECF No. 14-5 (Attorney Billing Records).)

ERISA allows for an award of reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2)(D). Pursuant to the Collection Policy, "[Defendant] shall be liable for the payment of . . . all costs including . . . attorneys' fees." (Montelle Decl. Ex. F (Collection Policy), ECF No. 12-2 at 3.)

District courts have broad discretion to determine the amount of attorneys' fees. *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Concrete Indus. One Corp.*, No. 22-CV-6080 (ENV)(TAM), 2023 WL 7390362, at *9 (E.D.N.Y. Aug. 9, 2023), *adopted sub nom. by Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Concrete Indus. One Corp.*, No. 22-CV-6080 (ENV)(TAM), 2023 WL 6969943 (E.D.N.Y. Oct. 23, 2023).

In the Second Circuit, courts calculate a "presumptively reasonable fee" by examining the lodestar amount, which is the product of a reasonable hourly rate and the reasonable

number of hours required by a case. *Cape Mount Heavy Constr. & Assocs., LLC*, 2023 WL 5830338, at *9. To determine a reasonable hourly rate, the court looks to the hourly rates that attorneys charge for comparable work. *Annuity, Pension, Welfare, Training & Lab. Mgmt. Coop. Tr. Funds of Int'l Union of Operating Eng'rs Loc. 14-14b, AFL-CIO by Christian v. Regal USA Concrete, Inc.*, No. 23-CV-1208 (FB)(RML), 2023 WL 7413837, at *4 (E.D.N.Y. Sept. 28, 2023), *adopted by* 2023 WL 6865599 (E.D.N.Y. Oct. 18, 2023). "The party seeking reimbursement of attorney's fees bears the burden of proving reasonableness and the necessity of the hours spent and rates charged." *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *10. A request for attorneys' fees must include contemporaneous time records that specify for each attorney, the hours expended and the nature of the work done. *Regal USA Concrete*, 2023 WL 7413837, at *3. "In reviewing a fee application, the Court should exclude 'excessive, redundant, or otherwise unnecessary' hours." *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *11 (quoting *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009)).

### 1.    Hourly Rate

Plaintiffs request attorneys' fees based on the following hourly rates: (1) $333 for attorney Grancio, who graduated from law school in 2016; (2) $333 for Associate Marlena Smith, who graduated from law school in 2018; and (2) $132 for legal assistants Eva Keating and Abigail Frankel. (Grancio Decl., ECF No. 14 ¶¶ 12–14; *id.* Ex. P, ECF No. 14-5 (Attorney Billing Records).)

"In what has become known as the 'forum rule,' courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits." *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266 (MKB), 2025 WL 405986, at *6 (E.D.N.Y. Feb. 5, 2025) (citing *Kyros L. P.C. v.*

*World Wrestling Ent.*, Inc., 78 F.4th 532, 547 (2d Cir. 2023)); *Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Site Fencing, Inc.*, No. 23-CV-2680 (HG)(MMH), 2024 WL 1082700, at *9 (E.D.N.Y. Mar. 11, 2024) ("The ordinary rates for attorneys in the Eastern District of New York are approximately $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates."), adopted by Order Adopting R. & R., *Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Site Fencing, Inc.*, No. 23-CV-2680 (HG)(MMH) (E.D.N.Y. Mar. 30, 2024); *Rubin v. HSBC Bank USA, NA*, --- F. Supp. 3d ---, No. 20-CV-4566, 2025 WL 248253, at *6 (E.D.N.Y. Jan. 21, 2025) (adjusting reasonable hourly rates for inflation and market conditions to $450–$650 per hour for partners, $300–$450 per hour for senior associates, and $150–$300 per hour for junior associates); *Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. USA Roofing Co. Corp.*, No. 22-CV-5053 (FB)(PK), 2023 WL 6318618 at *9 (E.D.N.Y. Sept. 12, 2023), *adopted by* 2023 WL 6308085 (E.D.N.Y. Sept. 28, 2023) (collecting cases and noting that courts have also awarded up to $150 for non-attorney support staff). The Court finds that the requested hourly rates for counsel and legal staff in this case are reasonable, as they are consistent with the general ranges of rates awarded.

### 2.    Reasonable Hours Expended

Counsel requests attorneys' fees based on a total of 46.8 hours of work, including 6.1 hours for attorney Grancio, 36 hours for attorney Smith, and 4.7 hours for legal assistants Keating and Frankel. (Grancio Decl., ECF No. 14 ¶ 16).  Plaintiffs have submitted contemporaneous time records that detail the work performed by their counsel.  After a careful review of the records, the Court finds the billed activities to be reasonable and not excessive,

redundant, or unnecessary.  Additionally, the number of hours expended in this case are consistent with range of reasonable hours expended in ERISA cases involving a default judgment.  *See, e.g.*, *Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp.*, No. 20-CV-1834 (FB)(SJB), 2022 WL 584536, at *10 (E.D.N.Y. Feb. 3, 2022), *adopted by* 2022 WL 580959 (E.D.N.Y. Feb. 24, 2022) (awarding 39.4 hours of work in an ERISA default judgment); *Cape Mount Heavy Constr.*, 2023 WL 5830338, at *12 (recommending awarding 48.8 hours for attorneys' fee in ERISA action where plaintiffs' counsel had to review extensive records and prepare a number of detailed declarations).

Accordingly, the Court respectfully recommends an award of **$14,639.70** in attorneys' fees.

### F.    Costs

Plaintiffs seek $491.68 in costs, including $405 in filing fees, $6.03 in postage, $78.00 in process server fees, and $2.65 in Lexis research fees.  (Grancio Decl., ECF No. 14 ¶ 18; *id.* Ex. P, ECF No. 14-5 at 6–7; Mem., ECF No. 15 at 19.)  "When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred by the attorneys and charged to clients." *Ret. Fund of Loc. 1482*, 2023 WL 7688689, at *7 (cleaned up).  Further, the Court permissibly takes judicial notice of the docket notations for paid filing fees.  *Phillips v. TraxNYC Corp.*, No. 21-CV-528 (LDH)(MMH), 2023 WL 1987206, at *11 (E.D.N.Y. Feb. 14, 2023), *adopted by* 2023 WL 2532006 (E.D.N.Y. Mar. 14, 2023).  Here, Plaintiffs are entitled to the filing fee for this case, as the docket reflects that the Fund paid the $405.  (ECF No. 1 Dkt. Entry.)  Plaintiffs also submit a receipt to support the service costs. (Grancio Decl. Ex. Q, ECF No. 14-6 at 1.)

However, Plaintiffs do not submit a receipt for postage—only a price list—and the Lexis receipt submitted with the motion redacts the total amount.  (*See id.* at 3–6.)  Accordingly, the record does not support an award of these costs.  However, the Court finds the costs for the filing fee and service of process to be documented and reasonable, and therefore, respectfully recommends that Plaintiffs should be awarded **$483.00** in costs.

### G.      Post-Judgment Interest

"The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  *Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (citing 28 U.S.C. § 1961).  Accordingly, the Court respectfully recommends that Plaintiff should be granted post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

## VII.   <u>CONCLUSION</u>

For all the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for default judgment at ECF No. 10 should be **granted in part** as follows: (1) a default judgment should be entered against Defendant[5] and (2) Plaintiffs should be awarded damages in the amount of **$276,891.56**, which includes: (a) **$197,666.40** in unpaid contributions and **$7,822.97** in Union Assessments for the period January 2023 through November 2023; (b) **$13,623.46** in accrued interested on unpaid contributions calculated through April 12, 2024 and any accrued interest of **$54.18** per day from April 13, 2024 until the date judgment is entered; (c) **$4,684.91** in late payment interest for the periods of November 2021 and April

---

[5] Plaintiffs' proposed default judgment (Grancio Decl. Ex. R, ECF No. 14-7) should be amended to reflect the recommendations herein, if adopted.

2022 through December 2022; (d) **$19,766.64** in liquidated damages on the unpaid ERISA contributions; (e) **$14,639.70** in attorneys' fees; (f) **$483.00** in costs; and (g) post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961.

A copy of this Report and Recommendation is being served on Plaintiff via ECF.  The Clerk of Court is respectfully directed to serve a copy of this Report and Recommendation forthwith to Defendant Toros Brothers Construction Corp. at 608 Liberty Avenue, Brooklyn, New York 11207 and torosgccorp@gmail.com.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Block.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
March 16, 2025

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge